# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1754v
### Filed: April 12, 2019
### (Unpublished)



```
* * * * * * * * * * * * * * * * * * * * * * *   *
                                                *
                                                *
                                                *
L   A        -R        ,                        *
                                                *   Special Master Oler
              Petitioner, pro se,               *
                                                *
                                                *
v.                                              *
                                                *   Meningococcal vaccine; POTS;
SECRETARY OF HEALTH AND                         *   Postural orthostatic tachycardia syndrome;
HUMAN SERVICES,                                 *   statute of limitations
                                                *
                                                *
              Respondent.                       *
                                                *
* * * * * * * * * * * * * * * * * * * * * * *   *
```

*L  A    -R    , pro se,* ▮, for Petitioner.

*Heather L. Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DISMISSAL DECISION[1]

On November 13, 2018, L  A    -R    ("Petitioner")[2] filed a petition for compensation with the National Vaccine Injury Compensation Program,[3] alleging that he developed postural orthostatic tachycardia syndrome ("POTS") as a result of a meningococcal vaccination (Menactra) he received on July 30, 2010. Petition ("Pet."), ECF No. 1.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Petition was initially filed by L  A    -R    mother, C    R    . When it was determined that Mr. A    -R    is not a minor, the case caption was altered to reflect Mr. A    -R    as the sole petitioner.

[3] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

I.      Summary of Medical Records

In support of his petition, Petitioner submitted medical records of his visits to Dr. ███████ A████ at Pediatric Neurology on November 7, 2013 and December 10, 2013. Exhibit ("Ex.") 1, ECF No. 1. On November 7, 2013, Dr. A████ noted that "[f]or the past year [Petitioner] has an unusual problem where when he stands up [] both of his feet are cold." Ex. 1 at 1. Dr. A████ does indicate a concern regarding an elevated hemoglobin value, but states that Petitioner has had "no history of othrostatic problems." *Id.*

On December 10, 2013, Dr. A████ saw Petitioner "for evaluation of positional acrocyanosis of one year's duration." *Id.* Petitioner's neurologic examination was normal. Ex. 1 at 2. Dr. A████ noted that when Petitioner stood up, his feet turned "reddish bluish" and cold, and there is a "slight purplish discoloration to his hands." Ex. 1 at 3. In checking Petitioner's pulse from sitting down to standing up, Dr. A████ indicated an increase from "50-60" to "120 or so." *Id.* Dr. A████ concluded that "[a] good possibility is that he could have Postural orthostatic tachycardia syndrome" and referred Petitioner to the dysautonomia clinic at UCLA Medical Center. *Id.*

On January 29, 2014, Petitioner was seen at UCLA by Dr. ██████Y█-G█. Ex. 1 at 4. Dr. Y█-G█ indicated that Petitioner's mother was concerned whether his symptoms were a reaction to a "nasal FluMist H1N1 live swine vaccine" Petitioner received "around 2009." *Id.* Dr. Y█-G█ noted a positive orthostatic change of "only 20 beats more" and concluded that Petitioner "may have mild dysautonomia with orthostatic intolerance." Ex. 1 at 5.

On March 26, 2014, Petitioner was seen by Dr. ████ M██████ in the Pediatric Electrophysiology Clinic. Ex. 2 at 3. Dr. M██████ noted that "[a]ccording to mother, [Petitioner] has had an insignificant medical history…until about 4-5 years ago when he began to experience fatigue, dizziness, weakness, feeling tired, elevation of pulse into the 120's -130's from 50's and 60's after standing, dehydration, blood pooling in distal extremities when standing, near syncope, heat intolerance, weight loss, and finding an elevation in his hemoglobin and hematocrit." *Id.* Dr. M██████ further indicated that "mother stated that these symptoms seem to manifest themselves following administration of nasal FluMist H1N1 live swine vaccine (2009?)." *Id.*

Petitioner also submitted records of a medical visit on June 3, 2014, however, they do not indicate any provider name or information. Ex. 2 at 1. They note that the purpose of Petitioner's visit was "for a second opinion regarding a diagnosis of POTS" and that "[h]e has exhibited a number of symptoms over the last three years." *Id.* The records state that "[o]rthostatic vitals in the office today do not indicate orthostasis, however his heart rate significantly increase[d] with positional changes, which may suggest POTS." Ex. 2 at 2.

II.     Procedural History

On February 7, 2019, I held a status conference via telephone with the parties to discuss the issue of the statute of limitations. Following the conference, I issued an Order to Show Cause on February 12, 2019, directing and giving Petitioner an opportunity to explain why his claim should not be dismissed as time-barred. ECF No. 9.

On April 3, 2019, Petitioner filed a letter, dated March 22, 2019, requesting an extension to respond to my Order to Show Cause. ECF No. 11.

On that same day, Petitioner filed a second letter, dated March 30, 2019, acknowledging that his petition was filed beyond the three-year statutory limit, explaining that he had not been diagnosed for at least five years after his vaccination. Petitioner's Response to Order to Show Cause ("Pet'r's Resp.") at 1, ECF No. 12. Enclosed with Petitioner's response was a single-page document entitled "Immunization Record," indicating "Menactra" on "7/30/10." Pet'r's Resp. at 2.

I held a second status conference with the parties via telephone on April 10, 2019. I confirmed that Petitioner's March 30, 2019 letter, received on April 3, 2019, was in fact his response to my Order to Show Cause and that he did not need an extension of time. I provided Petitioner and Respondent an opportunity to supplement the record and submit any additional documents. The parties indicated that they had nothing further to add.

III.   Legal Standard

The statute of limitations, or the timeframe within which a person who has sustained a "vaccine-related injury" or that person's legal representative must file a claim, is outlined in § 16(a)(2) of the Vaccine Act:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury *after the expiration of 36 months* after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

*Id.* § 300aa-16(a)(2) (emphasis added). The clock or statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Whether a petitioner knows the cause of his injury is not significant for purposes of the statute of limitations. *See Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322 (Fed. Cir. 2011).

In *Cloer*, the United States Court of Appeals for the Federal Circuit reiterated the Vaccine Program's 36-month statute of limitations. *Id.* In doing so, however, the court recognized that equitable tolling, an extension of the three-year limit, can be applied in vaccine cases under very rare and extraordinary circumstances, for example, those involving fraud or duress. *Id.* The statute of limitations and the higher court's ruling are binding on my decision. The court cites *Pace v. DiGuglielmo* for the proposition that "equitable tolling requires a litigant to have diligently pursued his rights, but that 'some extraordinary circumstances stood in his way.'" *Id.* at 1344, quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).

IV.   Discussion

No extraordinary circumstances existed in this case. The petition alleges Petitioner received a meningococcal vaccine, Menactra, on July 30, 2010. *See* Pet.; Pet'r's Resp. at 2.

"Shortly after the vaccin[ation] [Petitioner] started experiencing symptoms [of] weakness, dizziness, light headed[ness], loss of balance and many other symptoms." Pet.   Petitioner acknowledges that "the reason it took us so long to file this is because it took us many years to be diagnosed and then we were hopping [sic] the things will get better." Pet.

The record in this case indicates that "the first symptom or manifestation of onset" occurred between 2009 and 2011.   Based on the varying historical accounts in the medical records, Petitioner had been symptomatic for approximately four to five years as of 2014. Ex. 1-2.  Under the Vaccine Act, Petitioner was required to file his petition sometime between 2012 and 2014. 42 U.S.C. § 300aa-16(a)(2).   The petition in this case was filed on November 13, 2018 – approximately seven to nine years after onset. Pet.

In reviewing Petitioner's submissions and taking into account Petitioner's representations during both status conferences, I can find no basis to toll the statute of limitations.  Petitioner does not claim to be the victim of fraud or duress that prevented him from filing a timely petition.  Nor does there appear to be any other extraordinary circumstance that would permit me to extend the strict three-year limit.

Accordingly, I find that Petitioner's claim is barred by the statute of limitations.  I do recognize and appreciate Petitioner's medical condition and I sympathize with his situation, however, this Court simply does not have the jurisdiction to entertain his petition.

**Thus, this case is DISMISSED as untimely.   The Clerk shall enter judgment accordingly.**

A copy of this decision shall be sent to Petitioner by regular first-class mail as well as certified mail at the following address:

L█ A███-R█████

Any questions regarding this Order may be directed to my law clerk, Ahmed Almudallal, at 202-357-6351 or by email at Ahmed_Almudallal@cfc.uscourts.gov.

**IT IS SO ORDERED.**

Katherine E. Oler
Special Master

4